FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT
E.D.N.Y.
* March 14, 2025 *
BROOKLYN OFFICE

KTF:NEM/DJM
F. #2024R00947

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------- X

UNITED STATES OF AMERICA

    - against -

TOMMY AIJIE DA SILVA WENG,
    also known as "Tommy Weng
    Da Silva" and "Jacky,"

              Defendant.

---------------------------- X

I N D I C T M E N T

Cr. No. 25-CR-94
(T. 18, U.S.C., §§ 912, 981(a)(1)(C),
1341, 1343, 2 and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))
Judge Nicholas G. Garaufis
Magistrate Judge Robert M. Levy

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The EB-5 Immigrant Investor Program

    1.    The United States' EB-5 Immigrant Investor Visa Program (the "EB-5

Program") provided a process whereby eligible immigrants could become lawful permanent

residents of the United States (i.e., become "Green Card" holders) by investing substantial

capital in a new commercial enterprise. The United States Citizenship and Immigration

Services ("USCIS") administered the EB-5 Program.

    2.    In addition to the requirement of investing in a new commercial enterprise,

the EB-5 Program had job creation and capital investment requirements. EB-5 Program

petitions filed before March 15, 2022 required either a minimum $1,000,000 investment or, if the

investment was in a rural area or an area that experienced high unemployment, a $500,000

investment.   The investor was also required to invest the capital in a new commercial enterprise that created at least 10 full-time jobs for qualifying U.S. workers.

3.     After making the capital investment, the investor filed with USCIS the Form I-526 Immigrant Petition by Alien Entrepreneur form ("Form I-526").   Once the Form I-526 was approved, the investor could file a Form I-485 Application to Register Permanent Residence or Adjust Status form ("Form I-485") for conditional lawful permanent resident status.   At the end of a two-year conditional period, the EB-5 Program investor could request that USCIS issue a permanent Green Card, the award of which was discretionary, based on factors relating to the success of the project at creating jobs for qualifying U.S. workers.

II.     <u>EB-5 Consulting Firms</u>

4.     Consulting firms existed that purported to assist foreign investors through the EB-5 Program process by, among other things, identifying development projects for investments that met the requirements of the EB-5 Program and preparing EB-5 Program documents for submission to USCIS.   Individuals or consulting firms seeking to solicit EB-5 Program investors were prohibited from guaranteeing, whether explicitly or implicitly, that investors would receive a return on the capital placed at risk in connection with their investment.

III.     <u>The Defendant and the EB-5 Fraud Scheme</u>

5.     The defendant TOMMY AIJIE DA SILVA WENG, also known as "Tommy Weng Da Silva" and "Jacky," was a resident of the Eastern District of New York. WENG was the owner of Ding Cheng Overseas Management Inc., an entity incorporated in New York State through which he committed the fraud described herein.

6.     Between approximately June 2016 and March 2024, the defendant TOMMY AIJIE DA SILVA WENG engaged in a scheme to defraud Jane Doe, an individual

whose identity is known to the Grand Jury, by falsely representing that he could assist Jane Doe in obtaining a Green Card on an expedited basis through the EB-5 Program. Jane Doe was a citizen of China but resided in the United States. Throughout this period, WENG also falsely represented to Jane Doe that he was a United States federal law enforcement officer.

7.    In or about June 2016, Jane Doe was introduced to the defendant TOMMY AIJIE DA SILVA WENG at a meeting in China. At this June 2016 meeting, WENG claimed that he was a United States federal law enforcement officer. WENG told Jane Doe that he was looking for investors on behalf of the United States government for a project to build hotels in California. WENG told Jane Doe that investors in this project would be eligible to apply for a Green Card under the EB-5 Program, and that because the project was backed by the United States government, and because of his own government connections, investors in the project would be able to obtain a Green Card on an expedited basis, in under two years. WENG further explained that the minimum investment was $500,000.

8.    During the June 2016 meeting, Jane Doe executed a contract with the defendant TOMMY AIJIE DA SILVA WENG, whereby Jane Doe would invest $500,000 with WENG through the EB-5 Program. WENG told Jane Doe that while he would not charge Jane Doe for his services, he would require that Jane Doe pay $1,500 in filing fees for the Form I-526.

9.    In or about July 2016, the defendant TOMMY AIJIE DA SILVA WENG met with Jane Doe in Flushing, New York. Jane Doe gave WENG a check for $501,500, which was made payable to WENG's company, Ding Cheng Overseas Management Inc. At this meeting, WENG also showed Jane Doe a law enforcement badge and gave Jane Doe, among other things, a business card from the "Federal Officers Police Association" bearing the name "Aijie Da Silva (Tommy)".

10.     In or about September 2016, the defendant TOMMY AIJIE DA SILVA WENG sent Jane Doe a Form I-526 receipt number and told Jane Doe that this receipt number could be used to track her application status on the USCIS website.   When Jane Doe typed the receipt number into the USCIS website, the website indicated that the application was in process. The USCIS website, however, did not show a name associated with the receipt number.   When Jane Doe complained to WENG about the apparent lack of progress in the application process, WENG gave Jane Doe false excuses, including administrative delays.

11.     In or about August 2018, the defendant TOMMY AIJIE DA SILVA WENG sent Jane Doe a new Form I-526 receipt number.   When Jane Doe entered this new receipt number into the USCIS website, it showed that the associated Form I-526 had been approved on or about June 26, 2018.   The information on the USCIS website led Jane Doe to believe that WENG had submitted her EB-5 Program application as promised and that it was being processed.

12.     Over the next several years, from approximately August 2018 to March 2024, the defendant TOMMY AIJIE DA SILVA WENG made a series of misrepresentations to Jane Doe that her EB-5 Program application was in process in order to continue to defraud Jane Doe.   During this time, following the purported approval of her Form I-526, Jane Doe's Form I-485 still required approval and she periodically communicated with WENG to discuss the status of her EB-5 Program application.

13.     For example, in or about January 2020, the defendant TOMMY AIJIE DA SILVA WENG met with Jane Doe in Flushing, New York.   During this meeting, Jane Doe asked to see a physical copy of the document approving her Form I-526.   WENG had previously refused to share any physical or electronic documents with Jane Doe and told her, in sum and

substance, that the application was part of a government-backed program, and everything had to be done secretively.   In the January 2020 meeting, WENG showed Jane Doe a Form I-526 approval and Jane Doe took a picture of the document.   The document WENG showed Jane Doe bore the Form I-526 receipt number that WENG had previously provided to her and Jane Doe's full name.   As a result of seeing this document, and believing that WENG was a United States federal law enforcement officer, Jane Doe continued to believe that her EB-5 Program application was in process.

14.     In or about August 2022, the defendant TOMMY AIJIE DA SILVA WENG asked Jane Doe to mail him records necessary to include with Form I-485 of the EB-5 Program application, to adjust Jane Doe's status to a conditional permanent resident within the United States.   Jane Doe mailed, among other things, records of a physical exam, her fingerprints, an employment verification letter, marriage records and other personal documents via the United States Postal Service to WENG at Ding Cheng Overseas Management Inc., at an address in Flushing, New York.

15.     On or about October 15, 2022, Jane Doe again asked the defendant TOMMY AIJIE DA SILVA WENG whether there had been any progress with her EB-5 Program application.   Using the instant messaging application WeChat, WENG sent Jane Doe additional false excuses for the delay, including about a lawsuit in California related to the EB-5 Program.

16.     Later that month, in or about October 2022, the defendant TOMMY AIJIE DA SILVA WENG asked Jane Doe to meet in front of the federal courthouse in Los Angeles, California, to sign paperwork associated with the EB-5 Program application.   On or about October 28, 2022, outside of the federal courthouse, WENG presented Jane Doe with a packet of

papers and asked her to initial every page.    At that meeting, WENG also told Jane Doe that he

worked for the United States Department of Homeland Security, but that he would be

transferring to a new law enforcement position with Interpol in Milan, Italy.

17.    In or about April 2023, in response to Jane Doe's increasing suspicion, the

defendant TOMMY AIJIE DA SILVA WENG threatened to withdraw Jane Doe's EB-5 Program

application entirely and refund her money if she did not continue to trust him.    On or about June

1, 2023, WENG sent Jane Doe via WeChat a photograph of a purported partial bank statement

from Ding Cheng Overseas Management Inc. to show her that, on or about April 28, 2023, a

deposit of $510,491.00 had been made into the Ding Cheng Overseas Management Inc. account,

representing Jane Doe's refunded money.    Jane Doe told WENG she did not understand how her

investment could be terminated without her consent, but nonetheless indicated her desire to

continue with the Green Card application.    A subsequent comparison between (a) the

photograph that WENG sent Jane Doe of the partial bank statement from Ding Cheng Overseas

Management, and (b) the actual bank statement from Ding Cheng Overseas Management Inc.,

shows that the photograph that WENG sent Jane Doe was fraudulently created.    A review of the

actual bank statement from Ding Cheng Overseas Management Inc. shows that, instead of

having deposits totaling $631,376.82, as WENG represented, this account only had $491.00 in

deposits during April 2023.    Thus, WENG manipulated the photograph he sent to Jane Doe.

18.    Between approximately January 2024 and March 2024, the defendant

TOMMY AIJIE DA SILVA WENG returned a total of $75,000.00 to Jane Doe via three wire

transfers.    To date, WENG has not returned the remaining $426,500.00 to Jane Doe.    Moreover,

a review of the USCIS database conducted on or about December 3, 2024 revealed no record of

any paperwork ever being filed by or on behalf of Jane Doe related to the EB-5 Program.

## COUNT ONE
(Wire Fraud)

19.    The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

20.    In or about and between April 2016 and March 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant TOMMY AIJIE DA SILVA WENG, also known as "Tommy Weng Da Silva" and "Jacky," together with others, did knowingly and intentionally devise a scheme and artifice to defraud Jane Doe and to obtain money and property from Jane Doe by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: communications on WeChat and wire transfers.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT TWO
(Mail Fraud)

21.    The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph

22.    In or about August 2022, within the Eastern District of New York and elsewhere, the defendant TOMMY AIJIE DA SILVA WENG, also known as "Tommy Weng Da Silva" and "Jacky," together with others, did knowingly and intentionally devise a scheme and artifice to defraud Jane Doe, and to obtain money and property from Jane Doe by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing such scheme and artifice and attempting to do so, did knowingly cause to be delivered

by mail and private and commercial interstate carrier according to the direction thereon, mail matter, to wit: a package sent through the United States Postal Service to Ding Cheng Overseas Management at an address in Flushing, New York containing Jane Doe's personal documents for an EB-5 Program application.

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

## COUNT THREE
(False Personation of a Federal Officer)

23.     In or about and between April 2016 and March 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant TOMMY AIJIE DA SILVA WENG, also known as "Tommy Weng Da Silva" and "Jacky," together with others, did knowingly and intentionally falsely assume and pretend to be an officer and employee acting under the authority of the United States and any department, agency and officer thereof, to wit: a United States federal law enforcement officer, including an employee of the United States Department of Homeland Security, and acted as such, and in such pretended character demanded and obtained money, paper, documents and things of value, to wit: money and Jane Doe's personal documents for an EB-5 Program application.

(Title 18, United States Code, Sections 912, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE AND TWO

24.     The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

25.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

10

seek forfeiture of any other property of the defendant up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

s/
FOREPERSON

By David Patluck, Assistant U.S. Attorney

JOHN J. DURHAM
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK